<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES COWARD, | |
| Plaintiff, | Civil Action No. 13-2222 (MAS)(TJB) |
| v. | **MEMORANDUM OPINION** |
| GARY M. LANIGAN, et al., | |
| Defendants. | |

<u>**Shipp, District Judge**</u>

Plaintiff Charles Coward ("Plaintiff") is proceeding with the instant Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants are liable to Plaintiff for violations of his constitutional rights. Before the Court are two summary judgment motions filed by Defendants Dr. Abu Ahsan ("Dr. Ahsan") (pled as Dr. Hassan) and Charles E. Warren ("Warren"), seeking final resolution on all claims against them. For the reasons stated below, the Court grants the motions and grants summary judgment on all claims in favor of the Defendants.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of this Opinion, the Court views all facts in the light most favorable to Plaintiff, the non-moving party, and recites only the relevant facts. When the Complaint was filed, Plaintiff was a pretrial detainee confined at the New Jersey State Prison in Trenton, New Jersey. (Compl. 3, ECF No. 1.) Plaintiff asserts in the Complaint that his Eighth Amendment rights have been violated by various defendants based on: (1) deplorable living conditions, (2) denial of proper medical services, and (3) improperly placing him in a restraining chair. (*Id.* at 6-7.)

On screening,[1] the Court dismissed all claims against Defendants Gary M. Lanigan and St. Francis Medical Center, finding that Plaintiff had failed to state a claim upon which relief may be granted against those two defendants. (Order 4, May 3, 2013, ECF No. 2.) Subsequently, on motion from Dr. Ahsan, the Court dismissed all state-law medical malpractice claims against him based on Plaintiff's failure to serve an Affidavit of Merit as required by state law. (Order, Dec. 4, 2014, ECF No. 35.) In that dismissal order, the Court stated that the remaining claims in the Complaint were "Plaintiff's . . . Fourteenth Amendment due process claims asserting deprivation of liberty and denial of medical care against Defendants [Warren and Dr. Ahsan]." (*Id.*)

After discovery concluded, Warren and Dr. Ahsan filed the instant motions. (*See* Dr. Ahsan's Mot., ECF No. 45; Warren's Mot., ECF No. 46.) Plaintiff then requested an extension of time to file his opposition, (*see* Mot. for Extension of Time, ECF No. 52), which the magistrate judge granted, giving Plaintiff until October 2, 2015 to file his opposition (Order, Sept. 2, 2015, ECF No. 54). However, as of the date of this Opinion, no opposition has been filed.

## II.   STANDARDS OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts

---

[1] The Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2), since Plaintiff had requested and was granted *in forma pauperis* status. (*See* Order, May 3, 2013, ECF No. 2.)

2

will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)); *Anderson*, 477 U.S. at 255; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine dispute" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A non-moving party has created a genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine [dispute] for trial." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). To do so, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 477 (3d Cir. 2013).

There can be "no genuine [dispute] as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). While courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at summary judgment, a *pro se* plaintiff is not exempt from his burden of providing some affirmative *evidence*, *i.e.* not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (upholding a district court's grant of summary judgment against a *pro se* plaintiff for his failure to submit expert testimony in a denial of medical services suit); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

### III. DISCUSSION

#### A. Exhaustion

Both Dr. Ahsan and Warren argue that all of Plaintiff's remaining claims, namely his Fourteenth Amendment due process claims asserting deprivation of liberty and denial of medical care, fail because Plaintiff did not exhaust administrative remedies. Federal law requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In order to exhaust

administrative remedies, a prisoner must properly pursue all administrative remedies to their end. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). To determine whether a prisoner has exhausted administrative remedies, the Court must evaluate a prisoner's compliance with the prison administrative regulations governing inmate grievances. *Id.* at 226-27. A prisoner must bring a grievance to the attention of the appropriate prison official so that the facility has an opportunity to respond to the grievance. *Id.* at 227.

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by [federal law], but by the prison grievance process itself." *Small v. Camden Cty.*, 728 F.3d 265, 272 (3d. Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The Third Circuit observed in *Nyhuis v. Reno*, however, that an inmate may satisfy § 1997e(a) through substantial compliance. 204 F.3d 65 (3d Cir. 2000). "Without embellishing—for the case law in the area will have to develop—we note our understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77-78. Plaintiff's denial of medical services and deprivation of liberty claims are subject to the exhaustion requirement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Fennell v. Cambria Cty. Prison*, 607 F. App'x 145, 149 (3d Cir. 2015).

Defendants contend that Plaintiff never availed himself of the prison grievance system with regard to his denial of medical services and deprivation of liberty claims. In support, Warren submits a declaration from Linda Santoro, a Secretarial Assistant in charge of processing Inmate Remedy and/or Grievance Forms. (*See* Decl. of Linda Santoro 1, ECF No. 46-3.) According to

Ms. Santoro, she conducted a search of all Inmate Remedy Forms filed by Plaintiff in the prison's record system and submitted all of the forms found along with her declaration. *Id.* at 5. These forms are attached as Exhibit C to her declaration. *See id.* at 31-47. A review of these forms show that none of the Inmate Remedy Forms submitted by Plaintiff referenced the issues Plaintiff raised in the instant Complaint. In Warren's Statement of Material Facts, he represents that Plaintiff has never filed an Inmate Remedy Form related to Plaintiff's instant claims. (Warren's Statement of Material Facts 5, ECF No. 46-2.) Plaintiff has submitted no evidence to the contrary. In the Complaint, while Plaintiff does not conclusively admit that he did not exhaust administrative remedies, Plaintiff does state that "[p]revious grievances have went unanswered or pushed off continuously . . . so any informal or formal attempt [for] relief will go unanswered or held and pushed aside." (Compl. 4.) This statement, perhaps, would explain the lack of grievances regarding the claims Plaintiff raised in the current Complaint. Regardless of the reason, however, the fact remains that Plaintiff has not submitted any evidence to rebut Defendants' declaration that he did not exhaust administrative remedies. As such, the Court finds that he has failed to exhaust administrative remedies as required by § 1997e on all remaining claims in the Complaint.[2] On that basis alone, summary judgment would be appropriate on the remaining claims. Here, Plaintiff's claims also fail because he does not establish the elements of his claims, which the Court addresses below.

---

[2] Warren argues in his motion that the Complaint may also be construed as asserting conditions of confinement claims against him, but those claims similarly fail due to Plaintiff's failure to exhaust. (*See* Warren's Br. 2 n.1, ECF No. 46-1.) The Court has not previously construed the Complaint as raising those claims. However, as stated above, the Court has reviewed all of the grievances filed by Plaintiff, and the Court agrees that, to the extent the Complaint can be read to assert conditions of confinement claims against Warren, those claims would fail for failure to exhaust.

### B. Denial of Medical Services

Even if Plaintiff had exhausted administrative remedies, his denial of medical services claims against Dr. Ahsan and Warren fail. In the Complaint, Plaintiff alleges that Dr. Ahsan "refus[ed] to remove [a] staple out of my vein which caused a serious bacterial infection." (Compl. 5.) Plaintiff further alleges that this resulted in "large black scabs . . . on my legs, arms, and abdomen," which he claims that Dr. Ahsan refused to treat. (*Id.* at 6.)

In support of his motion for summary judgment on this claim, Dr. Ahsan provides detailed records of Plaintiff's treatment by the prison, including records of treatment by Dr. Ahsan himself. (*See* Ex. B, Infirmary Records of Charles Coward, ECF No. 45-4 to 45-7.) Dr. Ahsan asserts in his statement of material facts, dated August 3, 2015, that "[Plaintiff] was admitted to the infirmary, where [he] remains to this day, under constant monitoring and medical care." (Dr. Ahsan's Statement of Material Facts ("Ahsan Statement"), ECF No. 45-13 at 6.) Dr. Ahsan further asserts that attempts to remove the staples from Plaintiff's arm were made, but they were unsuccessful. (*Id.* at 7.) The lesions on Plaintiff's body were analyzed, and following consultations with St. Francis Medical Center and the University of Pennsylvania, the cause was determined to likely be pyoderma gangrenosum, an immune system disorder. (*Id.*) Regardless of the cause, Plaintiff received constant treatment for the lesions. *Id.* Furthermore, records submitted by Dr. Ahsan suggest that Plaintiff had a history of injuring himself in order to obtain medical treatment from the infirmary and to manipulate prison officials in order to obtain better housing. (*Id.* at 7-8.) According to Dr. Ahsan, this accounts for the voluminous nature of Plaintiff's infirmary records. (*See id.* at 6 n.1.) As stated above, Plaintiff has submitted no opposition, and therefore has not pointed to any evidence in the record to controvert Dr. Ahsan's submissions.

The Fourteenth Amendment to the United States Constitution, Section 1, guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment protects a pretrial detainee from "conditions of confinement, including his health care or lack thereof, that amounted to punishment." *Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015) (citing *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005)). In this Circuit, the analysis of a pretrial detainee's claim of inadequate medical services is guided by the standard used for inadequate medical services claims by convicted prisoners under the Eighth Amendment. *Id.* Regardless, "[u]nder any standard applicable here, governmental actors' intent must be greater than mere negligence for their alleged misconduct to support a constitutional claim." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)).[3]

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 328 (3d Cir. 2014), *rev'd on*

---

[3] The Court makes note of a recent Supreme Court decision, *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which calls into question the propriety of applying the Eighth Amendment analysis to pretrial detainees. In *Kingsley*, the Supreme Court held that the standard applied to an excessive force claim for prisoners under the Eighth Amendment, which requires the state actor to have acted with a reckless disregard of the plaintiff's rights—a subjective standard—is incompatible with a claim of excessive force under the Fourteenth Amendment for a pretrial detainee. *Id.* at 2472-73. Instead, objective reasonableness is the proper standard for such claims. *Id.* Post-*Kingsley*, some courts have limited its holding only to excessive force claims, and those courts continue to apply the Eighth Amendment analysis in other contexts for pretrial detainees, such as denial of medical services claims. *See Roberts v. C-73 Med. Dir.*, No. 14-5198, 2015 WL 4253796, at *3 (S.D.N.Y. July 13, 2015). A post-*Kingsley* Third Circuit decision seems to suggest that the Eighth Amendment may still be the continuing standard in this circuit. *See Gerholt v. Orr*, 624 F. App'x 799, 801 n.3 (3d Cir. 2015) ("We have made clear, however, that the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner.") (citation and quotation omitted). As the Third Circuit has not announced a different test for pretrial detainees, this Court applies the Eighth Amendment test to Plaintiff's claims.

*other grounds*, 135 S. Ct. 2042 (2015). Under *Estelle*, in order to state a valid claim for denial of medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Barkes*, 766 F.3d at 321; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Mere allegations of medical malpractice are not sufficient to establish a constitutional violation. *Allah v. Hayman*, 442 F. App'x 632, 635-36 (3d. Cir. 2011) (citing *Spruill*, 372 F.3d at 235).

To satisfy the first prong of the *Estelle* inquiry, the inmate must allege that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain or a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (citations and quotation marks omitted); *see Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Rand v. New Jersey*, No. 12-2137, 2015 WL 1116310, at *14 (D.N.J. Mar. 11, 2015).

The second element of the *Estelle* test requires an inmate to allege that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). The Third Circuit has found deliberate indifference where

9

a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment." *Velasquez v. Hayman*, 546 F. App'x 94, 97 (3d Cir. 2013) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Here, Plaintiff falls far short of establishing the second element of *Estelle*. Undisputed records submitted by Dr. Ahsan show that at no time was he deliberately indifferent to Plaintiff's medical needs related to the staples in Plaintiff's arm, the lesions, or any other ailment. He has provided, and continues to provide, Plaintiff with what appears to be excellent care. Dr. Ahsan has sought numerous expert consultations with outside sources in order to determine the cause of Plaintiff's conditions. Plaintiff has not proffered any evidence to the contrary to establish that a genuine dispute of material fact exists. The record would unlikely establish even negligence on Dr. Ahsan's part, let alone deliberate indifference, nor does Plaintiff submit any evidence showing that Dr. Ahsan's actions were objectively unreasonable.

Plaintiff's lone allegation in support of this claim in the Complaint is that Dr. Ahsan refused to remove the staples in his arm. As the evidence shows, Dr. Ahsan did not "refuse" to remove the staples; attempts were made but they were unsuccessful. Further attempts were not made because there was no medical evidence that the staples caused any adverse conditions. (Ahsan Statement at 10.) Indeed, Plaintiff provides no evidence or expert opinion showing that removal of the staples was medically necessary. Plaintiff's allegation, at best, amounts to nothing more than a disagreement with the treatment he received, which is not cognizable under § 1983. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Fantone v. Herbik*, 528 F. App'x 123, 125

(3d Cir. 2013) (quoting *U.S. ex rel. Walker v. Fayette Cty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). "A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Soto-Muniz v. Corizon, Inc.*, No. 10-3617, 2015 WL 1034477, at *12 (D.N.J. Mar. 10, 2015).

With regard to Warren, since the Court already found that Plaintiff has not established that he received inadequate care, Warren cannot be liable for that claim. *See Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that when there are no underlying constitutional violations found, it precludes supervisory and policy-making liability, because such conclusion naturally follows from the principle that § 1983 claims require personal involvement). Accordingly, as Plaintiff fails to establish an essential element of his denial of medical services claim, the Court grants summary judgment in favor of Dr. Ahsan and Warren on this claim.

## C.  **Deprivation of Liberty**

Likewise, Plaintiff's claim against Warren for his alleged involvement in placing Plaintiff in a restraining chair also fails on substantive grounds. In support of his motion, Warren argues that he had no direct involvement in the decision or the act of placing Plaintiff in the restraining chair. In a § 1983 claim, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

Since Plaintiff did not file opposition, there is no direct evidence from Plaintiff that Warren was personally involved in placing him in the restraining chair or that Warren was even aware of the incident. What little evidence is in the record comes from Plaintiff's deposition. In response to a question regarding whether Warren was aware of Plaintiff being placed in the restraining chair,

11

Plaintiff stated, "I'm gonna say that I don't know. . . . I got to think that the lieutenant would report back to the administrator. I'm just going on speculation." (Dep. of Charles Coward, Nov. 24, 2014, 59:21-60:4, ECF No. 45-3.) Speculation is not evidence of personal involvement. *See Woloszyn*, 396 F.3d at 319. As such, Plaintiff fails to establish an essential element of this § 1983 claim, and summary judgment is granted in favor of Warren on this claim.

## IV.     CONCLUSION

For the reasons set forth above, the summary judgment motions are GRANTED, and summary judgment on all claims is GRANTED in favor of all defendants.

/s/ Michael A. Shipp

**Michael A. Shipp**
**United States District Judge**

**Dated:** March 29th, 2016